UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**BURNHAM ASSOCIATES, INC.,**       )
        **Plaintiff,**      )    **CIVIL ACTION NO.:**
                                    )
**v.**                              )
                                    )    **IN ADMIRALTY**
**UNITED STATES OF AMERICA,**       )
        **Defendant.**      )
_____)

## COMPLAINT

NOW COMES the Plaintiff Burnham Associates, Inc. ("Plaintiff" or "Burnham"), by and through its undersigned counsel, and for its complaint against the Defendant United States Army Corps of Engineers ("Defendant" or "USACE"), hereby states:

## PARTIES

1. Burnham is a Massachusetts corporation with its principal office located at 14 Franklin Street, Salem, MA.

2. USACE is a United States government agency with its New England District office located at 696 Virginia Road, Concord, MA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1333, and 41 U.S.C. §§ 7102(d), 7104(b), as this is an admiralty claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure that arises out of a maritime contract under the Contract Disputes Act ("CDA").

4. Venue lies within this District under the provisions of 46 U.S.C. § 30906 as Burnham's principal place of business is located in the Commonwealth of Massachusetts.

**STATEMENT OF FACTS**

5. On or about June 29, 2020, USACE solicited bids (Solicitation No. W912WJ20B0015) (the "Solicitation") for maintenance dredging at the Harbor of Refuge located on the east side of Block Island, RI ("Old Harbor"). *See* Construction Solicitation and Specifications attached hereto as **Exhibit 1**.

6. Old Harbor is an active commercial harbor and a navigable waterway.

7. Old Harbor is host to a large ferry terminal that accommodates a year-round ferry service, as well as piers for cargo operations and dockage for commercial fishing vessels. *See* **Exhibit 1** at § 1.1.1.

8. Use of the public docks in Old Harbor is typically minimal during the winter months.

9. On or about August 18, 2020, USACE awarded Contract No. W912WJ-20-C0014 (the "Contract") to Burnham. *See* Contract Award attached hereto as **Exhibit 2**.

10. Under the Contract, Burnham agreed to dredge and remove 43,700 cubic yards of maintenance material (i.e., sand and silt) from Old Harbor between October 1, 2020 and January 15, 2021, in exchange for the firm fixed price of $1,509,100. *See id.* at 2.

11. The final contract price was later adjusted to $1,650,312 to reflect the actual final quantities of dredged material removed: 49,925 cubic yards. *See* Modification A00002 attached hereto as **Exhibit 3**.

12. The purpose of the Contract was to dredge a navigable waterway that facilitates maritime traffic and maritime commerce at Block Island, RI.

13. Under the terms of the Contract, Burnham was to provide labor, supervision, materials, and equipment necessary to complete the dredging project.

14. In the Dredging Operation Plan submitted to (and approved by) USACE, Burnham clearly indicated that the equipment to be mobilized at Old Harbor included the tug boat Aegean Sea, clamshell dredge Samson III, scow SE104, scow 742, push boat Strider, and one small crew boat. *See* Dredging Operation Plan attached hereto as **Exhibit 4** at § 1.3.

15. Scows are used in dredging projects to transport the material that has been excavated by the dredge; the dredge can hold only one scow at a time.

16. A barge mooring is typically required at or near the site of a dredging project to make use of multiple scows in a commercially reasonably manner.

17. The Solicitation notes that Old Harbor "is used by deep draft commercial vessels (passenger ferry), fishing vessels, and numerous small recreation and commercial craft, which may cause some interference with contract operations." *See* **Exhibit 1** at § 1.5(f).

18. In a later section, the Solicitation separately states that other contractors would "be performing horizontal directional drilling and cable splicing in the vicinity of the Crescent Beach Nearshore Disposal Site ("Crescent Beach")." *See id.* at § 1.9.4.

19. The Solicitation expressly provides that other contractors' operations would consist only of making use of two jack-up barges in the vicinity: one located in the northeast quadrant of Crescent Beach, the other located outside and to the east of Crescent Beach.  *See id.*

20. Crescent Beach is located approximately one mile north of Old Harbor and the contractually agreed dredging prism. *See* Project Map of Block Island Harbor of Refuge and Crescent Beach attached hereto as **Exhibit 5**.

21. From the plain language of the Solicitation and Contract, Burnham reasonably understood that the ongoing work being performed by other contractors would be limited to Crescent Beach (i.e., one mile from the dredging site). *See* **Exhibit 1** at § 1.9.4.

22. Burnham further understood that it would need to coordinate its disposal activities at Crescent Beach with other contractors and agreed to not interfere with the ongoing work being performed by other contractors at Crescent Beach. *See id.*

23. Prior to the commencement of dredging operations, Burnham submitted an Accident Prevention Plan to USACE – this plan had to be approved by USACE before Burnham could commence dredging under the Contract. *See* Accident Prevention Plan attached hereto as **Exhibit 6**.

24. Burnham's Accident Prevention Plan specifically acknowledges that coordination with other contractors would be required <u>during disposal operations at Crescent Beach</u>. *See id.*

25. Burnham's Accident Prevention Plan then states, "No coordination with other contractors is expected to occur within the dredge prism inside the Harbor of refuge." *See id.*

26. On or about August 21, 2020 – nearly a month after submitting submitted its bid and three days after USACE had awarded it the Contract – Burnham learned that other contractors would be storing equipment and regularly operating within the Old Harbor dredging prism throughout the length of the Contract's period (i.e., October 1, 2020 to January 15, 2021).

27. The Solicitation and Contract failed to disclose that other contractors would be storing equipment and regularly operating in Old Harbor, failed to disclose that other contractors might interfere with Burnham's dredging operations in Old Harbor, failed to disclose that Burnham would need to coordinate its dredging activities in Old Harbor with other contractors, and – finally - failed to disclose that other contractors would at times effectively block up to half of Burnham's available working area in Old Harbor with their vessels and equipment.

28. Based on the clear and unambiguous specifications provided in the Solicitation, and as is customary in dredging projects of this scope, Burnham reasonably understood that no coordination with other contractors would be required within the dredging prism located inside Old Harbor. *See* **Exhibit 1** at §§ 1.5(f), 1.9.4., 1.11.

29. Burnham mobilized its equipment on October 9, 2020, to commence dredging operations at Old Harbor pursuant to the Contract.

30. The presence of the other contractors' vessels and equipment immediately (and severely) limited Burnham's available work area in Old Harbor and effectively blocked many areas of the dredging prism with physical obstructions.

31. Further, the persistent presence of these physical obstructions materially changed the physical conditions in Old Harbor from those specified in the Solicitation and Contract, as well as from those ordinarily encountered in dredging projects.

32. On or about October 17, 2020, the local Harbormaster expressed major concerns to the other contractors and USACE about the presence and storage of cable barges and equipment owned by JT Clearly in Old Harbor while the dredging project was underway. *See* Letter from Harbormaster dated June 21, 2021, attached hereto as **Exhibit 7**.

33. On October 19, 2020, Burnham provided written notice to the USACE that the constant presence of other contractors in the Old Harbor dredging area amounted to a changed condition and prevented both (1) the safe maneuvering of its dredge, and (2) the employment of both scows to allow concurrent dredging in different parts of Old Harbor. *See* Burnham E-mail to USACE dated October 19, 2020 attached hereto as **Exhibit 8**.

34. Burnham specifically advised USACE that the presence of other contractors precluded mobilization of Burnham's second scow due to the lack of available space in Old Harbor. *See id.*

35. Due to the undisclosed presence of other contractors operating in Old Harbor, Burnham lacked sufficient space to safely install a mooring barge in the area to dock one of the two scows when not in active use. *See id.*

36. Burnham's plan to employ two scows for the performance of its obligations under the Contract is expressly provided in its Dredging Operation Plan. *See* **Exhibit 4** at § 1.3.

37. Because the dredge can only store (or utilize) one scow at a time, and due to the lack of suitable shoreside moorings available in Old Harbor, Burnham was limited to using only one scow at any given time for the length of the project.

38. In addition, Burnham advised that the presence of other contractors required constant and direct coordination with these companies, leading to further unanticipated delays that were not disclosed in the Solicitation or Contract.

39. Upon information and belief, other contractors – namely JT Cleary – continued to regularly operate and store equipment in the Old Harbor dredging area from the date of mobilization (i.e., October 9, 2020) and continuing through January 1, 2021.

40. The interfering activities of other contractors – after the mobilization date – include storing cable barges and floating equipment in Old Harbor, maintaining a crane barge and jack-up units in the northeast corner of Old Harbor, outfitting jack-up units via supply barges in Old Harbor, and operating crew boats in and out of Old Harbor.

41. Burnham's equipment and crew were mobilized on the Old Harbor dredging project for a total of 14 weeks (October 9, 2020 - January 14, 2021). During that period, Burnham incurred costs of $1,620,001.40 for equipment, labor, and corporate overhead.

42. Based on data provided by Burnham to the USACE in its daily contractor's quality control reports, Scow SE104 removed 11,625 cubic yards of dredged material (CYM) over the course of 11 working days in October 2020 - an average of 1,056 CYM per day.

43. Scow 742, meanwhile, removed approximately 40,425 CYM in 51 working days from November 2020 – January 2021 - an average of 792 CYM per day.

44. Between October 9, 2020 - January 14, 2021, Burnham fulfilled its contractual obligations and disposed of 49,925 cubic yards of dredged material in 62 total working days while using only one scow on any given day.

45. By adding a second scow to its rotation, Burnham would have been able to dispose of 49,925 cubic yards of dredged material in approximately 26 working days (or 6 weeks of mobilization).

46. These additional 8 weeks of mobilization increased Burnham's costs – for crew payroll, equipment, and corporate overhead costs – by a total of $925,715.12.

47. Burnham incurred these additional expenses as a direct result of the site conditions at Old Harbor being materially different from those described in the Solicitation and Contract.

48. Burnham detrimentally relied on the clear specifications provided in the Solicitation and Contract, which failed to mention that other contractors would regularly operate and store equipment in the Old Harbor dredging area, and was thereby induced to submit a drastically insufficient bid relative to the amount of time that would be required to complete its contractual obligations.

49. On June 1, 2022, Burnham, through its undersigned counsel, submitted a formal claim to USACE for, *inter alia*, $925,715.12 due to the changed site conditions that prevented Burnham's concurrent use of two scows during the dredging project. *See* Claim Notice attached hereto as **Exhibit 9**.

50. On September 16, 2022, USACE issued a final decision denying Burnham's claim for losses associated with the single scow limitation, in addition to related claims not raised in this Complaint. *See* USACE Final Decision attached hereto as **Exhibit 10**.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract – General Maritime Law

51. The allegations of paragraph nos. 1 through 50 of this Complaint are incorporated as if fully set forth herein.

52. Burnham and USACE entered into an agreement whereby Burnham agreed to dredge and remove 43,700 cubic yards of maintenance material from Old Harbor between October 1, 2020, and January 15, 2021, in exchange for the firm fixed price of $1,509,100.

53. By January 14, 2021, Burnham performed all its contractual obligations by completing the removal of 49,925 cubic yards of maintenance material from Old Harbor.

54. The final contract price was later adjusted to $1,650,312 to reflect the actual final quantities of dredged material removed.

55. USACE has failed to pay $925,715.12 due and owing to Burnham for additional costs incurred during its performance of the Contract.

56. Burnham incurred these additional costs as a direct result of the site conditions at Old Harbor being materially different from those described by USACE in the Solicitation and Contract.

57. USACE has failed to perform its obligations under its agreement with Burnham for the dredging of Old Harbor by, among other things, failing to make payments for these additional costs incurred during the performance of the contract.

58. As a result of the above, USACE has breached the terms of its maritime contract with Burnham, and Burnham is entitled to judgment for $925,715.12 plus interests and costs against USACE.

## COUNT II
### Breach of Contract (Failure to Include Proper Specifications)

59. The allegations of paragraph nos. 1 through 58 of this Complaint are incorporated as if fully set forth herein.

60. USACE's Solicitation and Contract provided the specifications for the Old Harbor dredging project.

61. Burnham bid on the project in reliance of USACE's specifications.

62. Burnham was awarded the Contract which incorporated the Solicitation and its specifications.

63. The Solicitation and Contract failed to disclose that other contractors would be regularly operating, and storing equipment, in the Old Harbor dredging area during the same time that dredging operations were scheduled to take place.

64. The presence of other contractors (and their equipment) in the Old Harbor dredging area substantially and materially interfered with Burnham's dredging operations and prevented it from mobilizing two scows as intended.

65. Burnham reasonably understood that no other contractors would be present in the Old Harbor dredging area based on industry norms and the clear language of the Solicitation,

which stated that the work of other contractors would be limited to Crescent Beach (located one mile from Old Harbor).

66. The presence of other contractors during dredging operations prevented Burnham from mobilizing two scows concurrently.

67. As a result, Burnham incurred an additional $925,715.12 in costs during the performance of the Contract.

68. Burnham was still able to fulfill all its obligations under the Contract.

69. USACE breached the Contract by failing to provide accurate specifications in the Solicitation.

70. As a direct result of USACE's breach of contract for failure to provide proper specifications, Burnham is entitled to damages of $925,715.12.

## COUNT III
### Breach of Contract (Differing Site Conditions)

71. The allegations of paragraph nos. 1 through 70 of this Complaint are incorporated as if fully set forth herein.

72. The Solicitation and Contract indicated that no other contractors would be present in the Old Harbor dredging area.

73. The Solicitation and Contract does mention that some interference to the dredging operations may be caused by routine maritime traffic in the area, however, there is no indication provided that other contractors would be storing large barges and equipment in the Old Harbor dredging area.

74. Burnham reasonably interpreted the Solicitation to mean that it would be able to install a mooring barge in Old Harbor so that two scows could be used concurrently during the dredging project.

75. Burnham relied on the Solicitation and Contract when putting together its bid and intended to use two scows concurrently during the dredging project.

76. Burnham's intent to use two scows is expressly noted in its Dredging Operation Plan.

77. After winning its bid, and once mobilization and dredging operations commenced, Burnham found that other contractors were occupying up to half of the Old Harbor dredging area at any given time.

78. The heavy presence of other contractors' barges and equipment materially changed the conditions of Old Harbor from those indicated in the Solicitation and Contract.

79. Due to the changed conditions which differed materially from those indicated in the Solicitation and Contract, Burnham was unable to mobilize a second scow.

80. Because it was unable to use two scows at any given time, Burnham needed an additional eight weeks of mobilization to fulfill its contractual obligations than if two scows were available on each working day.

81. As a direct result of the differing site conditions at Old Harbor, Burnham incurred an additional $925,715.12 in costs for labor, equipment, and corporate overhead.

82. These claimed costs are attributable solely to the differing site conditions from those specified in the Solicitation and Contract.

83. On June 1, 2022, Burnham submitted a claim for $925,715.12 in additional costs due to this specific differing site condition (i.e., the single scow limitation).

84. On September 16, 2022, USACE issued a final decision denying Burnham's claim for compensation due to a differing site condition.

85. This complaint is timely because it an appeal of a final default decision made to the District Court within twelve months from the date of its receipt.

## COUNT IV
### Breach of Contract (Superior Knowledge)

86. The allegations of paragraph nos. 1 through 85 of this Complaint are incorporated as if fully set forth herein.

87. USACE's Solicitation and Contract provided the specifications for the Old Harbor dredging project.

88. Burnham bid on the project in reliance of USACE's specifications.

89. Burnham was awarded the Contract which incorporated the Solicitation and its specifications provided by USACE.

90. The Solicitation and Contract fail to disclose that other contractors would be regularly operating and storing equipment in the Old Harbor dredging area.

91. Upon information and belief, USACE was aware that other contractors would be storing equipment and regularly operating in the Old Harbor dredging area during the same time as dredging project.

92. USACE failed to disclose this vital information to Burnham during the bidding process.

93. USACE failed to disclose this vital information to Burnham after receiving its Accident Prevention Plan.

94. USACE also failed to disclose this vital information to Burnham after receiving its Dredging Operation Plan, which specified Burnham's intention to mobilize two scows.

95. As a result, Burnham was led to believe that it would be able to use two scows concurrently during the dredging project at Old Harbor.

96. Upon information and belief, USACE was aware that Burnham had no knowledge that other contractors would be storing equipment and regularly operating in Old Harbor during the dredging project during the bidding process.

97. USACE's failure to disclose this information induced Burnham to submit a drastically insufficient bid relative to the amount of time that would be required to complete its contractual obligations if it could only use one scow at any given time.

98. USACE breached its Contract with Burnham by failing to disclose superior knowledge about the activities of other contractors in Old Harbor during the dredging project.

99. As a result of USACE's failure to disclose its superior knowledge, Burnham was given the false impression that it would be able to use two scows concurrently during the project, thereby increasing Burnham's daily efficiency and limiting its total weekly costs for equipment, crew, and corporate overhead.

100. Had USACE disclosed its superior knowledge regarding the presence of other contractors in Old Harbor, Burnham would have increased its bid to account for the additional time required to complete the dredging with only one scow mobilized at any given time.

101. As a direct result of USACE's failure to disclose its superior knowledge, Burnham incurred an additional $925,715.12 in costs for labor, equipment, and corporate overhead.

## RELIEF SOUGHT

WHEREFORE Burnham Associates, Inc. requests that this Honorable Court:

1. Enter judgment in favor of Burnham Associates, Inc. and against the United States Army Corps of Engineers on all counts in the Complaint;

2. Award Burnham Associates, Inc. damages in the amount of Nine Hundred Twenty-Five Thousand Seven Hundred Fifteen Dollars and 12/100 ($925,715.12);

3. Award Burnham Associates, Inc. interest, litigation costs, and attorneys' fees; and

4. Award Burnham Associates, Inc. such other and further relief as this Honorable Court may deem just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Burnham Associates, Inc., <br> By its attorneys, |
|  | _/s/ David S. Smith_____ <br> David S. Smith, Esq. <br> BBO No.: 634865 <br> J. Andrew Black, Esq. <br> BBO No.: 705139 <br> FARRELL SMITH O'CONNELL <br> AARSHEIM APRANS LLP <br> 27 Congress Street, Suite 109 <br> Salem, Massachusetts 01970 <br> Tel: 978-744-8918 <br> e-mail: dsmith@fsofirm.com |
| Dated: November 23, 2022 | e-mail: ablack@fsofirm.com |