# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | ) |
| | ) |
| **BURNHAM ASSOCIATES, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )    **Case No. 1:22-cv-12007-DJC** |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **September 6, 2023**

## I.     Introduction

Plaintiffs Burnham Associates, Inc. ("Burnham") have filed this lawsuit against the Defendant United States Army Corps of Engineers ("USACE") for damages arising from four counts of alleged breach of contract.  D. 1 at 8-13.  Defendants have moved to dismiss Count IV (breach of contract based on superior knowledge, D. 1 at 12) under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  D. 6.  For the reasons stated below, the Court ALLOWS the motion.

## II.     Standard of Review

### A.     Lack of Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), a defendant can move to dismiss an action in federal court based upon a lack of subject matter jurisdiction.  "'Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed.'"  Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc., 682 F.3d 26, 32 (1st Cir. 2012) (quoting Viqueira v.

First Bank, 140 F.3d 12, 16 (1st Cir. 1998)).  Instead, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).  In other words, once a defendant challenges the jurisdictional basis for a claim in federal court pursuant to Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of proving that jurisdiction exists.  Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007).

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996) (citing Murphy, 45 F.3d at 522).  The Court also "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in the case."  Id. at 1210.

## III.   Factual Background

The following facts are drawn from Burnham's complaint, D. 1, and are accepted as true for the purposes of resolving USACE's motion to dismiss.

Harbor of Refuge on Block Island ("Old Harbor") is a commercial harbor and navigable waterway that has a large ferry terminal, piers for cargo operations and dockage for commercial fishing vessels.  Id. ¶¶ 6–7.  USACE solicited bids for Solicitation no. W912WJ20B0015 (the "Solicitation") on or about June 29, 2020 for maintenance dredging at Old Harbor.  Id. ¶ 5.  The Solicitation disclosed that other contractors would "be performing horizontal directional drilling and cable splicing in the vicinity of the Crescent Beach Nearshore Disposal Site."  Id. ¶ 18.  In particular, the Solicitation indicated that two jack-up barges owned by National Grid and Orsted would operate in the area of Crescent Beach.  Id. ¶ 19; D. 1-1 at 12.  "Crescent Beach is located approximately one mile north of Old Harbor."  D. 1 ¶ 20.

USACE awarded Contract No. W912WJ-20-C0014 (the "Contract") to Burnham on August 18, 2020. Id.  ¶ 9. Under the Contract, Burnham agreed to dredge and remove 43,700 cubic yards of maintenance materials from Old Harbor in exchange for a fixed price of $1,509,100. Id. ¶ 10. The final contract price was later adjusted to $1,650,312 to reflect the actual removal of 49,925 cubic yards of maintenance materials. Id.  ¶ 11. Burnham also committed to providing the necessary labor, supervision, material, and equipment to complete the dredging project. Id. ¶ 13. This equipment included but was not limited to two scows to transport materials excavated by the dredge. Id. ¶¶ 14–15.

Based on the Solicitation and Contract, Burnham understood that other contractors' presence would be limited to Crescent Beach, which is one mile from the dredging site. Id. ¶ 21. Prior to starting the dredging project, Burnham submitted an Accident Prevention Plan to USACE, which needed to be approved by USACE before Burnham began the project. Id. at ¶ 23. Burnham's Accident Prevention Plan acknowledged that coordination with other contractors would be required during disposal operations at Crescent Beach, but indicated that "[n]o coordination with other contractors is expected to occur within the dredge prism inside the [Old Harbor]." Id. ¶¶ 24–25.

On August 21, 2020, three days after USACE had awarded Burnham the Contract, Burnham learned that other contractors would be storing equipment and regularly operating within the Old Harbor dredging prism throughout the period of Burnham's performance under the Contract (October 1, 2020 to January 15, 2021). Id. ¶ 26. Burnham alleges that the Solicitation and Contract failed to disclose the extent of other contractors' presence in Old Harbor, including "that other contractors would at times effectively block up to half of Burnham's available working area in Old Harbor with their vessels and equipment." Id. ¶ 27.

On October 17, 2020, the New Shoreham Harbormaster "expressed major concerns" to USACE and other contractors about the presence and storage of cable barges and equipment owned by JT Cleary in Old Harbor while the dredging project was underway.  Id.  ¶ 32.  On October 19, 2020, Burnham provided a written notice to the USACE that the constant presence of other contractors in the Old Harbor dredging area "amounted to a changed condition and prevented both (1) the safe maneuvering of its dredge, and (2) the employment of both scows to allow concurrent dredging in different parts of Old Harbor."  Id.  ¶ 33.  Burnham stated that other contractors, namely JT Cleary, continued to regularly operate and store equipment in the Old Harbor dredging area from the date of mobilization, October 9, 2020, continuing through January 1, 2021.  Id.  ¶ 39.  As an alleged result of these issues, the dredging project took eight additional weeks, increasing Burnham's costs for crew payroll, equipment, and corporate overhead costs by $925,715.12.  Id.  ¶ 46.

On June 1, 2022, Burnham submitted a formal claim to USACE for, *inter alia*, $925,715.12 "due to the changed site conditions that prevented Burnham's concurrent use of two scows during the dredging project" ("Formal Claim Notice").  Id.  ¶ 49.  The Formal Claim Notice made similar allegations to Burnham's October 19, 2020 correspondence and sought the same $925,715.12 in relief.  D. 1-9.  On September 16, 2022, USACE issued a final decision denying Burnham's claim.  Id.  ¶ 50.

## IV.   Procedural History

Burnham instituted this action on November 23, 2022.  D.  1.  USACE has now moved to dismiss Count IV of the complaint.  D.  7. The Court heard the parties on the pending motion on and took the matter under advisement.  D. 24.

V.      **Discussion**

A.      **Subject Matter Jurisdiction Under the Contract Disputes Act**

Under the Contract Disputes Act ("CDA"), contractors are afforded a two-step process to resolve disputes over federal government contracts.  Bethlehem Steel Corp. v. Avondale Shipyards, Inc., 951 F.2d 92, 93 (5th Cir. 1992).  First, a contractor must submit each claim against the federal government to the appropriate contracting officer for a decision. 41 U.S.C. § 7103(a). If the contractor disagrees with the contracting officer's decision, the contractor may then seek judicial review of that decision in federal court.  Id. § 7104(b).  In most cases, the Court of Federal Claims has exclusive jurisdiction over appeals of contract claims against the United States arising under the Contract Disputes Act ("CDA").  41 U.S.C. § 7104(b)(1); J-Way S., Inc. v. United States Army Corps of Engineers, 34 F.4th 40, 44 (1st Cir. 2022).  Nevertheless "the CDA vests admiralty jurisdiction in the federal district courts for lawsuits against the U.S. that 'aris[e] out of maritime contracts.'"  J-Way S., 34 F.4th at 44 (alteration in original) (quoting 41 U.S.C. § 7102(d)).

Here, neither party disputes that the Contract is a maritime contract and thus it was appropriate to institute the present action in this Court, rather than the Court of Federal Claims. D. 13 at 6–7; D. 22 at 1; see J-Way S., 34 F.4th at 46 (affirming that district court properly exercised jurisdiction over dredging contract dispute).  The government, however, alleges that Burnham's breach of contract claim based on superior knowledge was not properly exhausted pursuant to the CDA, D. 7 at 8; D. 22 at 1-3, and this Court lacks subject matter jurisdiction as a result.  In response, Burnham asserts that because this Court sits in admiralty, it "has jurisdiction to decide Count IV of this civil action against the USACE regardless of any alleged CDA procedural deficiencies."  D. 13 at 7.  The Court concludes, however, that claims related to maritime contracts are still subject to the CDA's procedural requirements.  Sw. Marine on Behalf of Universal Painting & Sandblasting Corp. v. United States, 43 F.3d 420, 424 (9th Cir. 1994)

(concluding that "while not all claims involving maritime contracts are perforce CDA claims, plaintiffs who seek recovery in contract under the CDA must comply with its provisions"); Bethlehem Steel Corp., 951 F.2d at 94 (ruling that maritime contracts are not exempt from CDA's administrative procedures and noting that 41 U.S.C. § 7102(d) refers to "[a]ppeals").  The Court must thus evaluate whether Burnham properly exhausted administrative remedies for its superior knowledge claim, Count IV.[1]

### B.    Exhaustion of Superior Knowledge Claim

Although the CDA requires that the claims presented in federal court be the same as those presented to the contracting officer, it "does not require ridged adherence to the exact language or structure of the original administrative CDA claim."  Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003).  "All that is required is that the complaint [submitted to court] arises from the 'same operative facts' and seeks 'essentially the same relief' as the claim presented to the contracting officer."  Sarro & Assocs., Inc. v. United States, 152 Fed. Cl. 44, 52 (2021); see K-Con Bldg. Systems, Inc. v. United States, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (explaining that claims are different if "they either request different remedies . . . or assert grounds that are materially different from each other factually or legally").  In other words, "the claim presented to the contracting officer" must be "specific enough to give the officer notice of the basis of the claim

---

[1] At oral argument, Burnham's counsel suggested that this Court could exercise supplemental jurisdiction over the superior knowledge claim because it is closely related to the other claims over which the Court has subject matter jurisdiction.  This argument was not properly raised and briefed in Burnham's opposition.  In any event, district courts have rejected the argument that the court may exercise supplemental jurisdiction over a CDA claim that has not been properly exhausted. Richland-Lexington Airport Dist. v. Atlas Props., Inc., 854 F. Supp. 400, 417 (D.S.C. 1994) (explaining that 28 U.S.C. § 1367 "confers federal jurisdiction over state claims, not federal claims"); Sumner Peck Ranch, Inc. v. Bureau of Reclamation, 823 F. Supp. 715, 748 (E.D. Cal. 1993).

and allow him to make an informed judgment about it." <u>Affiliated Constr. Grp., Inc. v. United States</u>, 115 Fed. Cl. 607, 612 (2014).

"[T]he superior knowledge doctrine imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to performance." <u>Giesler v. United States</u>, 232 F.3d 864, 876 (Fed. Cir. 2000). Generally the doctrine applies where: "(1) a contractor undertook to perform without vital knowledge of a fact that affects performance costs or duration; (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information; (3) any contract specification supplied misled the contractor or did not put it on notice to inquire; and (4) the government failed to provide the relevant information." <u>Id.</u>; <u>see</u> <u>Laidlaw Env't Servs. (GS), Inc. v. U.S.</u>, 43 Fed. Cl. 44, 50-51 (1999) (holding that contractor did not exhaust its remedies where its claim to the contracting officer failed to allege that contractor was unaware of government studies, that government did not inform contractor of said studies, or that contractor was damaged by withheld knowledge). "The nature of a superior knowledge claim naturally focuses on '*what* the government [knew] . . . and *when* they knew it.'" <u>Sarro & Associates</u>, 152 Fed. Cl. at 53 (emphasis and alterations in original) (quoting <u>Laidlaw</u>, 43 Fed. Cl. at 50).

In its Formal Claim Notice, Burnham states that it accepted and undertook to perform the Contract without knowledge of other contractors' presence in Old Harbor at the time of performance and that the Contract and Solicitation did not put it on notice of such presence. <u>See</u> D. 1-9 at 2 (asserting that "neither the Solicitation nor the Contract provides any indication that the other contractors would also be storing equipment, taking refuge, and regularly operating within the Old Harbor dredging prism"). Burnham further explained that it was damaged by USACE's failure to "disclose" this information due to the additional eight weeks required to

complete the project.  Id. at 2–7.   Indeed, Burnham's Formal Claim Notice seeks the same $925,715.12 as the present complaint does in Count IV.  D. 1 ¶ 101; D. 1-9 at 7.

The government nevertheless argues that the superior knowledge claim was not properly exhausted because the Formal Claim Notice does not "allege that USACE had superior knowledge about third-party contractors' work plans prior to October 1, 2020," "does not allege that USACE violated its duty to disclose superior knowledge concerning the Contract site conditions," and "does not consider any facts regarding what USACE knew or when it knew it about third-party contractors."  D. 7 at 9.

In support of its Formal Claim Notice, Burnham filed several exhibits, including a letter from the New Shoreham Harbormaster dated June 21, 2021 ("Harbormaster Letter").  D. 1-9 at 28; see D. 1-7.  The Harbormaster Letter indicates that the Harbormaster was approached by JT Cleary on August 24, 2020.  D. 1-9 at 28.  The letter then describes an August 28, 2020 meeting (which occurred after the Contract was awarded) between the Town of New Shoreham, USACE, National Grid, Orstead and Interstate Navigation regarding "the storage of JT Cleary equipment . . . and overall lack of space for such industrial equipment" in Old Harbor.  D. 1-9 at 28.

The body of the Formal Claim Notice, however, did not reference either the August 28, 2020 meeting or otherwise refer to the government's knowledge of other contractors' presence in Old Harbor.  See D. 1-9 at 1–9.  Even if Burnham had more clearly indicated in the Formal Claim Notice that it was relying on the August 28, 2020 meeting to establish USACE's knowledge of the contractors' presence in the dredging prism, this fact would not establish that USACE's knowledge was superior where USACE learned of the potential obstruction after or at the same time as Burnham did.  See Canpro Invs. Ltd. v. United States, 130 Fed. Cl. 320, 337 (2017) (concluding

8

that administrative remedies were not exhausted where certified claim indicated that "all parties . . . shared the same belief" regarding visitor volume); J.F. Shea Co. v. United States, 4 Cl. Ct. 46, 53 (1983) (holding that no superior knowledge claim is stated "where the knowledge of both the government and the bidder is based on data equally available to both parties").  Indeed, the Formal Claim Notice and the present complaint both indicate that Burnham became aware of the potential obstruction on August 21, 2020, three days after submitting its bid, and a week before the August 28 meeting with the Harbormaster.  D. 1 ¶ 26; D. 1-9 at 2.  While it might be possible to infer that USACE had knowledge of JT Cleary's activities within Old Harbor, Burnham was required to provide a "clear and unequivocal statement" disclosing the basis of its claim.  See Affiliated Constr., 115 Fed. Cl. at 613 (concluding that contracting officer was not required to "infer from the language of the claim" that contractor "was really contending that the conditions of the site differed from those assumed in the contract"); Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 91 (1989) (concluding that contracting officer's summary of plaintiff's claims as "due to *either inaccurate quantities estimates*" and "*contractor encountered additional material which were not shown on the drawings*" did not show that plaintiff presented superior knowledge and misrepresentation claims as opposed to a claim based on differing site conditions (emphasis in original)).

At oral argument, counsel for Burnham argued that under the certification requirements of the CDA, Burnham could not certify in good faith as to the government's superior knowledge based only on its "strong suspicions."  In relevant part, the CDA requires the contractor to "certify that—(A) the claim is made in good faith; (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief; (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and (D)

the certifier is authorized to certify the claim on behalf of the contractor."  41 U.S.C. § 7103(b). The purpose of the certification requirement is "to prevent the submission of fraudulent claims," Trafalgar House Constr., Inc. v. United States, 73 Fed. Cl. 675, 693 (2006), and to "trigger[ ] a contractor's potential liability for a fraudulent claim" under the CDA's antifraud provisions, Daewoo Eng'g & Constr. Co. v. United States, 557 F.3d 1332, 1340 (Fed. Cir. 2009).  Burnham has not explained why it could not have certified "in good faith" upon the "best of [Burnham's] knowledge and belief" that the government had superior knowledge as to other contractors' presence.   See 41 U.S.C § 7103(b); see, e.g., Meltech Corp., Inc. v. United States, No. 21-1532C, 2023 WL 1960803, at *1 (Fed. Cl. Feb. 13, 2023) (quoting contractor's second certified claim which provided notice of damages "based on the USACE['s] failure to disclose its superior knowledge").  Even if the contention were later disproven, there would be no basis for a fraud counterclaim where Burnham did not act "with intent to deceive and mislead." RDA Constr. Corp. v. United States, 132 Fed. Cl. 732, 794 (2017), aff'd, 739 F. App'x 644 (Fed. Cir. 2018) (holding that "incorrect and confusing claim" did not violate CDA); Oasis Int'l Waters, Inc. v. United States, 134 Fed. Cl. 405, 441 (2016) (ruling that contractor did not commit fraud where signatory "believed in the claim when he signed it").

In sum, the Court concludes that Burnham's superior knowledge legal theory is premised on operative facts that were not presented in the Formal Claim Notice, namely that USACE allegedly knew prior to Burnham's bid submission that other contractors would pose a significant obstruction to dredging in Old Harbor during the period of the Contract.   See Monterey Consultants, Inc. v. United States, 159 Fed. Cl. 641, 653 (2022) (concluding claim that government "negligently estimated the workload under the contract" was premised on different factual and legal basis than superior knowledge claim).  Accordingly, Burnham has not properly exhausted its

administrative remedies under the CDA, and this Court lacks subject matter jurisdiction.[2]  Because

Burnham could return to this Court if were to submit its superior knowledge claim to the

contracting officer and receive a denial, the appropriate course of action is to dismiss the superior

knowledge claim without prejudice.  See Thoen, 765 F.2d at 1116.[3]

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Defendant's motion to dismiss, D. 6, as to

Count IV of the complaint without prejudice.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] At oral argument, the Court also asked the parties whether futility might excuse exhaustion of administrative remedies in this case.  Courts have generally rejected the application of a futility exception to the explicit statutory claim exhaustion requirement of the CDA.  Pueblo of Zuni v. United States, 467 F. Supp. 2d 1099, 1112 (D.N.M. 2006) (ruling that "futility is simply not available as an excuse for nonexhaustion" of CDA claim) (citing Thoen v. United States, 765 F.2d 1110, 1116 (Fed. Cir. 1985)); see Keweenaw Bay Indian Cmty. v. Sebelius, 291 F.R.D. 124, 128 (W.D. Mich. 2013) (same).

[3] Given this ruling, the Court need not reach USACE's argument that Count IV should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).